IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARBLE VOIP PARTNERS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ZOOM VIDEO COMMUNICATIONS, INC.,<br><br>    Defendant. | Case No. 22-CV-2247-JAR-ADM |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Zoom Video Communications, Inc.'s ("Zoom") Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) (Doc. 49), seeking transfer of this patent infringement case to the Northern District of California. Plaintiff Marble VOIP Partners LLC ("Marble") opposes the motion. The matter is fully briefed, and the Court is prepared to rule. For the reasons explained below, and after considering all the relevant factors, the Court grants Zoom's motion and transfers this case to the Northern District of California.

**I.    Background**

Marble filed suit against Zoom in June 2022, accusing Zoom Phone and Zoom Meetings (the "Accused Products") of infringement of United States Patent No. 7,376,129 (the " '129 Patent"), entitled "Enabling Collaborative Applications Using Session Initiation Protocol ("SIP") Based Voice over Internet Protocol Networks ("VoIP")."[1] The '129 Patent provides, *inter alia*, "a core framework for enabling applications to use [SIP]-based [VoIP]," in essence, moving SIP support from individual applications to the operating system, which would recognize and

---

[1] Doc. 27-1.

highlight "clickable" SIP links in different programs for the user.[2]  Marble is a limited liability company incorporated under Texas law with a principal place of business in Carrollton, Texas. Marble describes itself as a "non-practicing entity," which is not registered to do business in Kansas and has no offices or employees in this District.  Zoom is a Delaware corporation headquartered in San Jose, California, where it employs approximately 1,200 employees.  Since January 2023, Zoom has not had an office in Kansas; before it closed, Zoom's office in this District focused on sales.

After this Court denied Zoom's motion to dismiss on ineligibility grounds,[3] Zoom moved to transfer this action to the Northern District of California on convenience grounds under § 1404(a).  According to Zoom, the case should be transferred because Marble has no connection to the District of Kansas; Zoom's accused products were designed and engineered in Northern California and abroad; Zoom's relevant witnesses and documents regarding the design, development, and production of its accused products are all located in Northern California; and virtually all potential third-party witnesses, e.g., engineers, are located in Northern California or China.  In support, Zoom provides the Declaration of its Technical Lead, Dennis Durling.[4] Marble opposes Zoom's request, and argues that it has not established that transfer is strongly favored.

## II.     Legal Standards

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit.[5]  The statute provides that, "[f]or the convenience of parties and witnesses,

---

[2] *Id.* at 2:30–38; 10:1, 13, 22, 23.

[3] Doc. 41.

[4] Doc. 49-1.

[5] *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

2

in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[6] "The district court has broad discretion under § 1404(a) to adjudicate motions to transfer based on a case-by-case review of convenience and fairness."[7] The Tenth Circuit instructs district courts to consider the following discretionary factors when determining whether to transfer a case:

> [P]laintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.[8]

The party moving to transfer a case bears the burden to show that transfer is appropriate under § 1404(a).[9] The movant must also "demonstrate that the balance of factors 'strongly favors' a transfer of venue under § 1404(a)."[10] "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue."[11]

**III.   Analysis**

Pursuant to § 1404(a), a court has the discretion to transfer a case if: (1) the transferee court is one where plaintiff could have filed suit originally, and (2) the convenience of the parties

---

[6] 28 U.S.C. § 1404(a).

[7] *Key Constr., Inc. v. W. Surety Co.*, No. 22-1247-DDC, 2023 WL 2187291, at *4 (D. Kan. Feb. 23, 2023) (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)).

[8] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Chrysler Credit Corp.*, 928 F.2d at 1516 (internal quotation marks omitted)).

[9] *Id.* (citing *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)).

[10] *Id.* at 1167 n.13 (collecting cases).

[11] *Id.* at 1167 (quoting *Scheidt*, 956 F.2d at 966).

and witnesses and the interest of justice favor transfer.[12]  The Court concludes that both prongs have been satisfied.

### A.     Suit could have been filed in transferee court

The putative transferee court, the Northern District of California, is one where Marble could have filed suit originally.  "The 'where it might have been brought' language . . . incorporates the requirements of jurisdiction and proper venue."[13]  Here, because Zoom resides in the Northern District of California and alleged acts of infringement were committed in that district, the transferee district satisfies both the personal jurisdiction and venue requirements for patent cases.[14]

### B.     Balance of factors favors transfer

If a case could have originally been filed in the transferee district, the Court considers whether transfer would serve the interest of justice and would be convenient for the parties and witnesses.[15]  The Court evaluates the relevant discretionary factors outlined above to determine whether Zoom has met its burden of demonstrating that the facts here strongly favor transfer of venue.  As discussed below, the Court concludes that they do.

#### 1.     Plaintiff's Choice of Forum

Marble has chosen Kansas as the forum for its patent action against Zoom.  A plaintiff's choice of forum is rarely disturbed.[16]  "The plaintiff's choice of forum receives less deference,

---

[12] 28 U.S.C. § 1404(a).

[13] *Mid Kan. Fed. Sav. & Loan Ass'n of Wichita ex rel. Resol. Tr. Corp. v. Orpheum Theater Co.*, 810 F. Supp. 1184, 1188–89 (D. Kan. 1992) (citing *Hoffman v. Blaski*, 363 U.S. 335, 342–44 (1960)).

[14] *See* 28 U.S.C. § 1400(b) ("[A]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.").

[15] 28 U.S.C. § 1404(a).

[16] *Bartile*, 618 F.3d at 1167.

4

however, if the plaintiff does not reside in the district."[17]  Likewise, courts "accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'"[18]  "In patent cases, the locus of operative facts usually lies where either the patent-in-suit or the allegedly infringing product was designed, developed and produced."[19]

Here, the District of Kansas is not Marble's home forum—Marble is both incorporated in Texas and has a principal place of business there.  Nonetheless, Marble argues that its selection of one of the statutorily defined home courts available in patent lawsuits under § 1400(b) should be given considerable weight and not disturbed.  That statute provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."[20]  But § 1400(b) does not provide for venue in the District of Kansas only, and Marble neither disputes that Zoom's headquarters are located in the Northern District of California nor argues that the alleged acts of infringement took place exclusively in Kansas.  Indeed, Marble asserts that every time a customer uses the Accused Products, they infringe on the '129 Patent, and it does not dispute that the Accused Products are used throughout the United States, including the Northern District of California.

Further, while Marble is correct that Zoom had an office located in Kansas City, it has not explained how the operative facts underlying this lawsuit are linked to the District of Kanas.

---

[17] *Id.* at 1168 (citations omitted).

[18] *Id.* (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

[19] *Nat'l Inst. for Strategic Tech. Acquisition & Commercialization v. Nissan N. Am., Inc.*, No. 10-1346-SAC, 2011 WL 915392, at *2 (D. Kan. Mar. 15, 2011) (quoting *Children's Net., LLC v. PixFusion, LLC*, 722 F. Supp. 2d 404, 413 (S.D.N.Y. 2010)).

[20] 28 U.S.C. § 1400(b).

Zoom asserts that the facts giving rise to Marble's infringement claims are located in Northern California or China, not Kansas; that it has never had a product design and development office in Kansas; and that the now-closed Kansas City office focused on sales, not design, development, and production of the accused products. Marble makes no allegation that any of the employees in Zoom's now-closed Kansas City office have any knowledge or information about the underlying facts of this case or that the allegedly infringing technology was created in this District. While Marble has sufficiently alleged that Zoom has adequate contacts in this District and that venue is proper under § 1400(b), the focus of the transfer analysis under § 1404(a) is not whether the parties have significant contacts in the chosen forum "writ large, but rather the 'significant connections between a particular venue and the events that give rise to a suit.'"[21] While Marble's choice of forum "is not irrelevant," the Court concludes that it is entitled to little weight because neither Marble nor the operative facts have ties to Kansas.[22] This factor is neutral.

### 2. Accessibility of Witnesses and Sources of Proof

#### a. *Witnesses*

Witness convenience is the most important factor under a § 1404(a) analysis.[23] To establish inconvenience, "the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the

---

[21] *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)).

[22] *See Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, No. 21-cv-03027, 2022 WL 1184894, at *3 (D. Colo. Jan. 27, 2022) (holding under *In re Apple Inc.*, while venue was established under § 1400(b), plaintiff's choice of forum in patent infringement case is afforded little weight where neither plaintiff nor the underlying facts have ties to the district).

[23] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010).

use of compulsory process would be necessary."[24]  Zoom asserts that this factor weighs in favor of transfer because most of its material witnesses reside in Northern California and its research and development and marketing teams are located at Zoom's headquarters in San Jose.  It specifically identifies seven material witnesses most likely to testify at trial that have the most relevant knowledge of the Accused Products, all of whom reside in Northern California, including: a Telephony Engineer, a Software Engineer, a Senior Engineering Manager, and an Operations Manager, who all work on features related to the SIP functionality for the Zoom Phone; the Head of Industry Marketing and Interim Head of Product Marketing who is responsible for the product marketing plans and strategies, including Zoom Phone and Zoom Meetings; the Chief Accounting Officer, who is knowledgeable about financials covering the Accused Products; and its Technical Lead, who works on features related to SIP functionality features of Zoom Meetings.[25]  Because these witnesses are current employees of Zoom, they will be available whether the trial is held in Kansas or Northern California, and compulsory process will not be necessary to assure their presence at trial.[26]  However, inconvenience to employee witnesses is also relevant to the Court's consideration of the witness-accessibility factor.[27]

In response, Marble notes that at least two Zoom executives live on the East Coast: the Global Chief Information Officer is located in New York City, and the Chief Information Security Officer is located in Charlotte, North Carolina.  If these witnesses are called to testify, however, they will be required to travel to a distant forum and to be away from their homes and

---

[24] *Id.* (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992) (internal quotations and alterations omitted)).

[25] Doc. 49 at 9–10.

[26] *Nat'l Inst. for Strategic Tech. Acquisition & Commercialization v. Nissan N. Am., Inc.*, No. 10-1346-SAC, 2011 WL 915392, at *3 (D. Kan. Mar. 15, 2011) (citations omitted).

[27] *See Ginegar LLC v. Slack Techs., Inc*., No. 21-cv-00494, 2021 WL 8153754, at *8 (D. Colo. Dec. 4, 2021) (collecting patent infringement cases).

work for an extended period of time, regardless of whether the venue is in Kansas or Northern California.  Marble also provides a LinkedIn search result for current and former Zoom employees located in and around the Kansas City area, and notes that 14 local employees who formerly worked at the Kansas City location, including engineers, security analysts, managers, and phone enablement specialists, still list themselves as employees of Zoom, presumably as remote workers.  However, Marble does not attempt to connect these putative Kansas City witnesses to any anticipated issues in this case or allege that they have any relevant knowledge about this case.  As noted, Zoom's Kansas City office was focused on sales rather than the design, development, and production of the Accused Products, and it appears that the 14 employees identified by Marble worked in Information Technology, i.e., customer service.

Zoom further notes that two of the named inventors of the '129 Patent reside in the Northern District of California and the other inventors reside in New York.  It also contends that other Zoom engineers involved in the development and maintenance of the Accused Products reside in China.  Zoom does not suggest that any of these non-party witnesses are unwilling to travel to testify at trial, and Marble does not dispute the likelihood of more flight options from New York to Northern California than Kansas City or from China to Northern California than to Kansas City, thus neutralizing any further travel distance required of these witnesses.[28]

Because Zoom has identified a greater number of actual employee witnesses in the Northern District of California with a greater breadth of relevant knowledge than the witnesses in Kansas identified by Marble, the Court concludes that this factor weighs in favor of transfer.

---

[28] *See Marble VOIP Partners LLC v. RingCentral, Inc.*, No. W-22-CV-00259, 2023 WL 3938480, at *6 (W.D. Tex. June 9, 2023) (citing *In re Apple Inc.*, 979 F.3d 1332, 1342 (Fed. Cir. 2020) (holding when witnesses will have to travel a significant distance to either forum, "the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor.").

### b.     *Proof*

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."[29] Marble argues that this factor should carry no weight because modern electronic data storage makes documentary evidence accessible from any location. The Federal Circuit, however, has rejected this reasoning, noting that "the fact that [the defendant] stores documents in electronic form at data centers around the country" does not weigh in favor of the plaintiff's chosen venue or against transfer.[30] That court has concluded that "[w]hile electronic storage makes documents more widely accessible than was true in the past, the fact that documents can often be accessed remotely does not render the sources-of-proof factor irrelevant."[31] Thus, the district court still considers the location of custodians of electronic documents in its analysis of this factor.[32]

In his Declaration, Durling states that relevant documents and files relating to research and development of the Accused Products are only accessible by individuals in the San Jose office and that third-party companies that provide hardware for the Accused Products are headquartered in the Northern District of California.[33] Zoom likewise contends that it stores its source code for the Accused Products in a source code repository hosted by Zoom located in San

---

[29] *In re Apple Inc.*, 979 F.3d at 1340 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

[30] *In re Google LLC*, No. 2021-178, 2021 WL 4427899, at *6 (Fed. Cir. Sept. 27, 2021) (citations omitted).

[31] *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *4 (Fed. Cir. Oct. 13, 2021) (citation omitted); *see also In re Genentech*, 566 F.3d at 1346 (rejecting a district court's conclusion that "[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission.").

[32] *In re Google*, 2021 WL 5292267, at *2.

[33] Doc. 49-1 ¶¶ 14–18.

Jose.[34]  Marble makes no argument that any of the pertinent documents and files are maintained in Kansas beyond their general availability through electronic storage.  Marble's argument that the agreement in the Protective Order by Zoom's counsel that the source code could be made available in Houston, Texas on a computer without Internet or network access implies that the source code will be available in the cloud is misplaced.  As Zoom clarifies, its source code is never available in the cloud, and Marble does not dispute that review of the source code would require a Zoom engineer from its San Jose headquarters.[35]

For the foregoing reasons, the Court concludes that this factor weighs in favor of transfer.

### 3.   Cost of Making Necessary Proof

"The factor considering cost relates to the factor concerning witness convenience," because it requires the Court to compare the costs of trying the case in this District as opposed to the Northern District of California.[36]  If the case proceeds in the District of Kansas, the majority of the potential witnesses in this case, as well as the parties and counsel, will need to travel.  If the case is transferred, Marble's witnesses, employees, and counsel will still be required to travel, but the majority of Zoom's witnesses, employees, and counsel will not.  While the Court is mindful that a § 1404(a) motion should not be used to shift inconvenience from one party to the other,[37] "[b]ecause this District is not particularly convenient for either party, this factor weighs in favor of transfer."[38]

---

[34] *Id.*

[35] *See* Doc. 65-1 at 10.

[36] *Genetic Techs. Ltd. v. Agilent Techs., Inc.*, No. 11-cv-01389, 2012 WL 1015355, at *10 (D. Colo. Mar. 23, 2012).

[37] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)).

[38] *Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, No. 21-cv-03027, 2022 WL 1184894, at *4 (D. Colo. Jan. 27, 2022) (quoting *Body Science, LLC v. Boston Scientific Corp.*, 846 F. Supp. 2d 980, 997 (N.D. Ill. Mar. 6, 2012)).

### 4. Advantage of Having Local Court Determine Questions of Local Law

"When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale."[39] The Federal Circuit has made clear that in patent infringement cases where the allegedly infringing product is sold nationwide, that fact alone creates no more of a local interest in one venue that in another.[40] Zoom has not identified any obstacles to a fair trial in Kansas, and the parties agree that both this District and the Northern District of California are equally capable of applying federal law. The Federal Circuit has recently held, however, that it was clear error for the district court not to find that the local interest factor favors transfer where the events giving rise to the patent infringement suit "clearly have a particularized connection" with the transferee district.[41] Here, the events giving rise to this patent infringement suit have no connection to the District of Kansas but do have a particularized connection with the Northern District of California, as the Accused Products were designed and developed there. Accordingly, the Court finds that this factor favors transfer.

### 5. Docket Congestion

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."[42] Based on the most recently available data, the District of Kansas is substantially less congested on these statistics, except for the

---

[39] *Bartile*, 618 F.3d at 1170.

[40] *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021).

[41] *In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023) (noting the patented technology was invented in, and the patents prosecuted from, the transferee district and the accused products were developed in that district).

[42] *Bartile*, 618 F.3d at 1169 (citations omitted).

median time from filing to disposition, which is relatively close.[43] The Federal Circuit recently held that this factor should not weigh against transfer when the plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference."[44] Here, Marble identifies itself as a non-practicing entity. Because Marble does not likely engage in product competition in the marketplace, this factor is neutral.

### 6. Judicial Economy and All Other Practical Considerations

Under this factor, courts also consider that "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer."[45] "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer."[46]

Zoom argues that this factor weighs in favor of transfer because Marble has alleged infringement of the '129 Patent in a pending case in the Western District of Texas, *Marble VOIP Partners LLC v. RingCentral*, No. W-22-CV-00259, where RingCentral also filed a motion to transfer venue to the Northern District of California. That motion, however, was denied while the motion before this Court was pending, and the case will remain in Texas.[47]

---

[43] *See* United States Courts, *Federal Court Management Statistics*, December 2022 (last updated December 31, 2022), https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2022.

[44] *In re Google LLC*, 58 F.4th at 1383.

[45] *Marble VOIP Partners LLC v. RingCentral, Inc.*, No. W-22-CV-00259, 2023 WL 3938480, at *11 (W.D. Tex. June 9, 2023) (quoting *PersonalWeb Techs, LLC v. NEC Corp. of Am., Inc.*, No. 11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013)).

[46] *Id.* (quoting *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010)).

[47] *Id.* at *13 (applying Fifth Circuit law and denying RingCentral's § 1404(a) motion to transfer patent infringement action from the Western District of Texas, where Marble is incorporated, after finding that two of the

Marble argues that this Court's ineligibility ruling weighs against transfer because it would require the parties to educate another court about the technology at issue. The Court noted in its order denying Zoom's motion to dismiss, however, that it "lacks independent knowledge of how SIP-enabled VoIP computer architecture works."[48] Discovery is ongoing and claim construction briefing is not scheduled to begin until October 2023.[49] Given the posture of this case, judicial resources would not be wasted by transfer, and the Court concludes that this factor is neutral.

### 7. Remaining Factors

Neither party suggests that the enforceability of any judgment, relative advantages and obstacles to a fair trial, or conflict of laws will be implicated by transfer of venue. These factors are neutral.

### 8. Weighing the Factors

As they apply here, the Court finds that three of the relevant factors favor transfer: accessibility of witnesses and sources of proof, cost of making necessary proof, and local interest. The Court further finds none of the factors favor retaining the case in this District, and six are neutral. As the Western District of Texas noted in *RingCentral*, "[a] decision to uproot litigation and transfer is not the consequence of a simple math problem."[50] Instead, the governing standard in the Tenth Circuit requires the moving party to show that the relevant

---

relevant factors slightly favored transfer, two slightly disfavored transfer, and four factors were neutral; noting that the willing witness factor denoted most important by the Federal Circuit, and practical problems factor weighed slightly against transfer).

[48] Doc. 41 at 21.

[49] Doc. 59.

[50] *RingCentral*, 2023 WL 3938480, at *13.

13

factors "strongly favor" transfer of venue.[51]  The Court concludes that Zoom has met its burden.[52]  Here, the "center of gravity of this action," as well as the "overriding convenience inquiry" is clearly in the Northern District of California, where the majority of potential witnesses with relevant and material information reside, the Accused Products were researched, designed, and developed, and where the evidence is located.[53]  Exercising the discretion afforded by § 1404(a), the Court concludes that the convenience of the parties and the interest of justice would be better served by transferring the case to the Northern District of California.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Zoom Video Communications, Inc.'s Motion to Transfer Venue (Doc. 49) is **granted**; pursuant to 28 U.S.C. § 1404(a), this case shall be transferred to the Northern District of California.

**IT IS SO ORDERED.**

Dated: July 20, 2023

>                                    S/ Julie A. Robinson
>                                    JULIE A. ROBINSON
>                                    UNITED STATES DISTRICT JUDGE

---

[51] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 n.13 (10th Cir. 2010).

[52] *See Ginegar LLC v. Slack Techs., Inc.*, No. 21-cv-00494, 2021 WL 8153754, at *10 (D. Colo. Dec. 4, 2021) (granting transfer of patent infringement case from District of Colorado to Northern District of California where only one factor slightly favored retaining venue) (collecting cases); *see also In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial should grant a motion to transfer.").

[53] *See In re Microsoft Corp.*, No. 2023-128, 2023 WL 3861078, at *2 (Fed. Cir. June 7, 2023) (granting petition for mandamus and directing § 1404(a) transfer of patent infringement case from the Western District of Texas to the Western District of Washington) (quoting *In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023)).