UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARBLE VOIP PARTNERS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ZOOM VIDEO COMMUNICATIONS, INC,<br><br>    Defendant. | Case No. 23-cv-03619-JSW<br><br>**ORDER RE: TENTATIVE CLAIM CONSTRUCTIONS AND QUESTIONS** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULING AND QUESTIONS FOR THE CLAIM CONSTRUCTION HEARING SCHEDULED ON NOVEMBER 7, 2024, AT 10:00 A.M.:

The Court has reviewed the parties' briefs and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on legal authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, without argument or additional briefing by no later than November 4, 2024. *Cf.* N.D. Civil. Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority.

The Court suggests that associates or of counsel attorneys who are working on this case be permitted to address some or all of the Court's questions contained herein. Each party shall have approximately 60 minutes to present their arguments on claim construction. The Court provides its tentative constructions of the disputed terms of U.S. Patent No. 7,376,129 (the "'129 Patent").

A.  **DISPUTED TERMS**

1.  **"SIP link" (Claims 1, 5–7, 9, 13, 17, 19, 22)**

| Marble's Proposed Construction | Zoom's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "a SIP URL that is hyperlinked" |

The term "SIP link" appears in independent claims 1, 13, and 22 of the '129 Patent. Claim 1 recites a "method for enabling voice over Internet for computer applications, comprising steps of . . . providing a **SIP link** within a software application . . . ." '129 Patent cl. 1. Claims 13 and 22 recite "providing SIP service . . . by recognizing **SIP links** with the application and highlighting the **SIP link** in a user interface of the application to permit users to select the **SIP links** . . . ." *Id.* cls. 13, 22.

The parties dispute whether the term "SIP link" can simply be a SIP URL or whether the URL must be hyperlinked. Marble argues that the "SIP link" may only be a URL, and the hyperlinked URL is merely a preferred embodiment of the invention. Marble further argues that claim 6, which recites a "step of highlighting the SIP link . . . to permit users to click on the SIP links" refers to this hyperlinked embodiment, and therefore under the doctrine of claim differentiation, a "SIP link" does not need to be hyperlinked. (Dkt. No. 161 at 7.) Zoom argues that the word "link" is shorthand for "hyperlink," and that the claim language describing using the "SIP link" to permit "user invocation" of the SIP service demonstrates that "SIP link" must be user interactable object rather than just a plain text URL. Zoom further argues that the specification exclusively describes SIP links that may be clickable or otherwise interactable. (Dkt. No. 152 6–12.) The Court **tentatively** adopts the construction "a SIP URL that is hyperlinked."

(1) Does Marble contest the statement that "in the context of computer technology, the term 'link' is a shorthand form for and means 'hyperlink'"?

(2) Dependent claim 7 requires the "SIP link include a URL." Does Marble contend that its proposed construction is consistent with the doctrine of claim differentiation?

(3) Marble argues the '129 Patent describes an embodiment where a client "dials" a SIP URL, which demonstrates the SIP link does not need to be clickable. How does Zoom respond?

2

2. **"registering session initiation protocol (SIP) as a system service" (Claims 1, 13, 22)**

| Marble's Proposed Construction | Zoom's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "adding session initiation protocol (SIP) as a recognizable protocol to a common registry of the operating system or to application control logic of applications to make SIP available to all applications on the machine" |

The term "registering session initiation protocol (SIP) as a system service" appears in claims 1, 13, and 22 of the '129 Patent. All three claims recite "[a] method for enabling voice over Internet for computer applications, comprising the steps of *registering session initiation protocol (SIP) as a system service*; . . . ." '129 Patent cls. 1, 13, 22.

Zoom argues this term should be construed to require: (1) SIP be *added* to a "common registry of the operating system or to application control logic of applications" and (2) SIP be made available to all applications on the machine. (Dkt. No. 152 at 12–18.) Marble argues the Court should adopt the plain and ordinary meaning of the term, as was done in the co-pending litigation in the Western District of Texas. *See Marble VoIP Partners LLC v. RingCentral, Inc.*, 6:22-cv-00259-ADA, at ECF no. 66 (W.D. Tex. July 5, 2023). The Court **tentatively** adopts the construction "registering session initiation protocol (SIP) as a recognizable protocol to a common registry of the operating system or to application control logic of applications to make SIP available to all applications in the system."

(4) Does the Court's tentative construction of "registering session initiation protocol (SIP) as a recognizable protocol . . . to application control logic of applications to make SIP available to all applications in the *system*" address Marble's concerns about excluding "system[s] [that] may extend beyond the client device"? What is Zoom's response to Marble's concern about excluding systems that extend beyond the client device?

(5) Marble argues that "a POSITA would know that only *desired* applications would require the entry in the registry, not *all* applications as Defendant's construction requires." (Dkt. No. 148 at 14.) Is it Marble's position that the claimed invention does not make SIP

3

available to all applications on the machine and/or system? (*See* '129 Patent, 1:31–42.)

3.   **"[providing SIP service through an application programming interface (API) to permit access to service functions] by individual software applications" (Claims 1, 13, 22)**

| Marble's Proposed Construction | Zoom's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "[providing SIP service through an application programming interface (API) to permit access to SIP service functions] by multiple other software applications" |

The term "[providing SIP service through an application programming interface (API) to permit access to service functions] by individual software applications" appears in claims 1, 13, and 22 of the '129 Patent. All three claims recite "[a] method for enabling voice over Internet for computer applications, comprising the steps of . . . providing SIP service through an application programming interface (API) to permit access to service functions *by individual software applications*; . . . ." '129 Patent cls. 1, 13, 22.

Zoom argues the word "[a]pplications facially requires more than one application," and the reference to "'other' software applications originates with the claim language, specification, and prosecution history." (Dkt. No. 152 at 19.) Marble argues the API may either be "separate from an application making the use of the SIP [s]ervice" or a "component of the same application making use of the SIP [s]ervice." (Dkt. No. 161 at 15.) The Court **tentatively** adopts the plain and ordinary meaning of the term.

(6) Why can't "individual software applications" mean just a single application? Doesn't the specification's reference to "*one or more*" mean that it could just be one? *See* '129 Patent, 3:20–23.

(7) Is it Zoom's position that the claimed invention excludes a method in which the application providing the API is also the application that invokes SIP service functions?

4.   **"to permit user invocation of SIP service functions to enable voice over Internet service within the software application" / "to permit users to select the SIP links to enable voice over Internet service within the software application" (Claims 1, 13)**

| Marble's Proposed Construction | Zoom's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "to permit user invocation of SIP service functions to add voice over Internet service within the software application" / "to permit users to select the SIP links to add voice over Internet service within the software application" |

The term "to permit user invocation of SIP service functions to enable voice over Internet service within the software application" appears in claim 1 of the '129 Patent. The term "to permit users to select the SIP links to enable voice over Internet service within the software application" appears in claims 13 and 22 of the '129 Patent. All three claims similarly recite "[a] method for enabling [VOIP] for computer applications, comprising the steps of . . . providing a SIP link within a software application to permit [user invocation of SIP service functions] [users to select the SIP links] to enable voice over Internet service within the software application." '129 Patent cls. 1, 13, 22.

Zoom argues "the invention 'adds' a new system-service voice capability to applications, including those that may have already had a separate, standalone SIP capability." (Dkt. No. 152 at 20.) Zoom specifically argues that the "patentee repeatedly traversed the prior art, arguing that [prior art] did not 'add' a voice communication capability to applications." (*Id.*) Marble argues that construing the term to require "'add[ing]' improperly imports a functionality into the claims that is otherwise absent and lacks support." (Dkt. No. 148 at 17.) The Court **tentatively** adopts the plain and ordinary meaning of the term.

(8) During the prosecution of the '129 Patent, the patentee distinguished Steenfeldt by arguing the reference did not "**provide** voice communication capability to different software applications," "**provide** a link in a software application . . . to **provide** a voice communication capability" or "**expand** the use of VOIP to other software applications." (*See* Dkt. No. 148-4 at 297–299.) Is it Zoom's position that these statements also support its proposed construction?

5.     "passing the link [as a parameter]" (Claims 1, 7, 13, 17, 22)

5

| Marble's Proposed Construction | Zoom's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "programmatically forwarding the link [as a parameter]" |

The term "passing the link [as a parameter]" appears in independent claims 1, 13, and 22 of the '129 Patent, and dependent claims 7 and 17. The independent claims recite a step of "***passing the link as a parameter*** to permit external access to an invoked service function to provide voice communication capabilities for the software application." '129 Patent cls. 1, 13, 22. The dependent claims then recite a limitation wherein "the step of ***passing link as a parameter*** includes passing the URL to another party." *Id.* cls. 7, 17.

Zoom argues that "passing the link" means "programmatically forwarding the link," and should exclude actions of a human such as the user manually entering or copy/pasting a URL. (Dkt. No. 152 at 17.) Marble argues that the term "passing the link" is easily understood by a POSITA as the "process of transferring a hyperlink or URL from one application to another," and thus requires no construction. Specifically, Marble argues that this term encompasses a user who "share[s] the link over a service such as instant messaging, or email." (Dkt. No. 148 at 13.) The Court **tentatively** adopts the plain and ordinary meaning of the term.

(9) What is Zoom's best authority for why the antecedent basis of "*the* link" (i.e., referring back to the SIP link) precludes the user from forwarding or copying and pasting the link to another user?

6.  **"to permit external access to an invoked service function to provide voice communication capabilities for the software application" (Claims 1, 13, 22)**

| Marble's Proposed Construction | Zoom's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "to permit access to an invoked SIP service function that is external to the software application to add voice communication capabilities for the software application" |

The term "to permit external access to an invoked service function to provide voice communication capabilities for the software application" appears in independent claims 1, 13, and

22 of the '129 Patent. The independent claims recite the step of "passing the link as a parameter to ***permit external access to an invoked service function to provide voice communication capabilities for the software application***." '129 Patent cls. 1, 13, 22.

The parties dispute the meaning of "external access." Marble argues that the '129 Patent "teaches granting 'external access' of invoked SIP service functions to external ***users/devices***." (Dkt. No. 148 at 20.) Zoom, however, argues that "'external access' refers to the fact that the invoked SIP service function is external ***to the software application*** being provided with voice communication capabilities." (Dkt. No. 152 at 25.) Zoom further argues that "provid[ing] voice communications" requires "add[ing]" such capabilities, and not just "facilitat[ing]" such capabilities. (*Id*.) The Court **tentatively** adopts the plain and ordinary meaning of the term.

(10)  Do the parties have anything further they wish to address?

**IT IS SO ORDERED.**

Dated: October 31, 2024

_____
JEFFREY S. WHITE
United States District Judge